RENDERED: AUGUST 24, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0350-WC

DANIEL FARLEY                                                              APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
NO. 2022-CA-0332
WORKERS' COMPENSATION NO. WC-17-83257

P&P CONSTRUCTION, INC; AIR EVAC                                          APPELLEES
LIFETEAM; ARH DANIEL BOONE
CLINIC HARLAN; BRAD FINE; GRAM
RESOURCES, INC.; HARLAN ARH;
LEXINGTON FOOT AND ANKLE
CENTER, INC.; HONORABLE PETER
GREG NAAKE, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE THOMPSON**

**<u>AFFIRMING</u>**

This appeal concerns whether the Court of Appeals erred in ruling that

P&P Construction Inc. (P&P), and by extension its insurer Kentucky Employers

Mutual Insurance (KEMI), was not responsible for payment of medical billing

statements submitted outside of the 45-day period set forth in Kentucky

Revised Statute (KRS) 342.020(4).[1] That opinion reversed the opinion of the

---

[1] The statutory language at issue in KRS 342.020 was contained in subsection (1) at the time of Farley's injury; however, as of July 13, 2018, this subsection was renumbered as subsection (4). To avoid confusion, we will consistently refer to it by its current designation, KRS 342.020(4).

Workers' Compensation Board (the Board) affirming the Administrative Law Judge's (ALJ) determination that medical providers did not have to submit their billings until after a determination of liability. Farley now appeals to this Court as a matter of right. *See Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990); Ky. Const, § 115

In accord with published precedent, employers and their insurance carriers are not responsible for the payment of medicals—that have been contested and/or which have not yet (pre-award) been adjudged to be work-related or medically necessary—until such time as a determination of necessity or liability has rendered.

However, medical providers have no such right to delay tendering their billings. We agree with the Court of Appeals that pursuant to the unambiguous language of KRS 342.020(4), medical providers *are* required to submit their billings within 45-days of service, regardless of whether a determination of liability has been made, and employers and their insurance carriers are not responsible for payment of billings submitted to them after the 45-day period. The statute is unambiguous. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 8, 2017, Daniel Farley was injured while working as a section foreman for P&P when an air hose for a mine pump exploded causing a segmental left tibial shaft fracture and fibula fracture to his left leg. Farley underwent three surgeries to repair these fractures.

Farley's injury was indisputably work-related and KEMI, P&P's worker's compensation carrier, accepted the claim and began paying temporary total disability (TTD) benefits and—with certain exceptions—paying Farley's medical expenses.

In 2018 Farley sought treatment at ARH Daniel Boone Clinic (ARH) for "post-traumatic stress disorder and mood disorder." He saw a clinician at ARH on five occasions in 2018 (January 3rd, March 1st, May 1st, July 10th, and October 10th). The record shows billings for $123.00 per appointment for a total of $615.00. KEMI did not receive a billing for any of these appointments prior to December 12, 2018. Since each of the billings were for services rendered more than 45 days earlier, KEMI rejected them pursuant to KRS 342.020(4) which states, "The provider of medical services shall submit the statement for services within forty-five (45) days of the day treatment is initiated and every forty-five (45) days thereafter, if appropriate, as long as medical services are rendered."

KEMI also rejected billings totaling $128.00 from Harlan ARH Hospital/Gram Resources (Gram Resources) for imaging services performed on May 8, 2017, which were not received by KEMI until September 6, 2018.

In February 2019, Farley filed his initial workers' compensation claim alleging entitlement to benefits for injuries to his left leg, left hip and his lower back. The next day Farley filed a second claim asserting entitlement to benefits for post-traumatic stress disorder (PTSD) resulting from the accident. By that time, KEMI had paid Farley $71,390.16 in TTD and had paid an additional

3

$107,681.50 for Farley's medical expenses. Later that year, on October 28, 2019, Farley filed a third claim for "psychological overlay."

The parties ultimately negotiated a settlement on August 31, 2020, which was formally approved by the ALJ on September 1, 2020. The settlement with P&P and KEMI provided a lump sum payment of $125,000.00 to Farley with P&P and KEMI only "remain[ing] liable for reasonable, necessary & work-related medical expenses causally related to the left leg injury." Farley waived all claims for psychological injury or related expenses and agreed that "any provider of medical services is required to submit a statement for services within forty-five (45) days of the day treatment is initiated and neither the employer nor its carrier are liability [sic] for untimely medical billing under the [Workers' Compensation] Act and regulations."

On August 31, 2020, the ALJ also issued a conference order which recognized the remaining issue of unpaid and contested medical expenses which stated "[P&P] shall file the contested bills on or before the date of Hearing." At that time, the only two bills that KEMI had submitted to the ALJ for consideration were one regarding Farley being airlifted and another regarding a future proposed surgery, neither of which is a subject of this appeal.

On September 14, 2020, KEMI filed a written motion to amend its Form 112 Medical Fee Dispute filing and to join ARH and Gram Resources, noting that their billings had been previously denied by KEMI as being untimely

4

pursuant to KRS 342.020(4). Farley did not object to this amendment or the joinder of ARH and Gram Resources.

On November 13, 2020, the ALJ issued a decision determining that the 45-day rule in KRS 342.020(4) did not apply until *after* an award is made in the claim (*i.e.* the September 1, 2020 settlement), stating:

> The Defendant disputes treatment billing based on late submission of the medical billing based on KRS 342.020[(4)], which requires medical service providers to submit medical expenses to the employer, insurer, or medical payment obligor within 45 days after treatment is initiated. The Workers' Compensation Board has consistently held on a number of occasions the 45 day rule for submission of statements for services in KRS 342.020[(4)] has no application in a pre-award situation. The Kentucky Supreme Court in *R.J. Corman Railroad Construction v. Haddix,* 864 S.W.2d 915, 918 (Ky. 1993) pointed out that the requirement in KRS 342.020[(4)] for the payment of bills within 30 days receipt of the statement for services "applies to medical statements received by an employer after an ALJ has determined that said bills are owed by the employer."
> . . . .
>
> The Administrative Law Judge finds that the 45 day rule cited by the Defendant as a bar to its responsibility to pay for the medical treatment of an injured employee is *inapplicable prior to the entry of an award or agreement* which establishes that a work-related injury has occurred.

(Emphasis added).

Notably here, no party disputed that Farley had suffered a work-related injury and P&P had already paid, and never objected to paying, the vast majority of Farley's incurred medical bills prior to the settlement.

P&P appealed the ALJ's determination to the Board, but the appeal was held in abeyance while the case of *Wonderfoil, Inc. v. Russell,* 630 S.W.3d 706 (Ky. 2021), was pending before this Court. After our opinion in *Wonderfoil*

5

became final in October 2021, P&P pointed out to the Board that this Court had not addressed whether KRS 342.020(4) applied to medical providers pre-award, but rather discussed two administrative regulations concerning the time for claiming expenses and the filing of unpaid medical bills *by claimants*, not providers.

On February 25, 2022, the Workers' Compensation Board affirmed the ALJ's decision adding:

> We held in *Brown Pallet v. David Jones*, Claim No. 2003-69633 (entered September 20, 2007) the reasoning of the Supreme Court in *R.J. Corman Railroad Construction v. Haddix*, [864 S.W.2d 915 (Ky. 1993)] concerning the thirty-day provision for payment of medical benefits should also apply to the forty-five day rule for submission of medical bills. The Court in *R.J. Corman* stated, "until an award has been rendered, the employer is under no obligation to pay any compensation, and all issues, including medical benefits, are justiciable.
> . . . .
>
> Contrary to P&P's arguments, we find the rationale contained in *R.J. Corman Railroad Construction v. Haddix, supra,* is applicable. We additionally find instructional the recent holding by the Kentucky Supreme Court in *Wonderfoil,* supra. There the Court held the sixty-day submission requirement for injured workers only applied post-award, or a determination of compensability by an ALJ, stating specifically, "Accordingly, when viewed in the context of the regulatory scheme, 803 KAR 25:096, § 11's application only post-award best effectuates the intent of the Commissioner and prevents an absurd result." By extension, we find the forty-five-day requirement set forth in KRS 342.020(4) likewise is applicable only after a determination of compensability of a claim by an ALJ.

P&P appealed to the Kentucky Court of Appeals arguing that the ALJ and Board had incorrectly ruled that the 45-day rule for submission of billings by medical providers only applies post-award and that the holdings in *R.J. Corman*

6

and *Wonderfoil, supra*, were not applicable to the statutory duties of the medical providers.

The Court of Appeals agreed with P&P writing:

> [W]e hold that the Board misconstrued the controlling statute and precedent and therefore erred as a matter of law in holding that the 45-day requirement for providers to submit billing statements applied only post-award. The plain and mandatory language of the statute does not contain anything that limits the application of the 45-day rule to post-award situations. Therefore, we hold that this requirement applies both pre- and post-award. In addition, this interpretation of KRS 342.020(4) will not harm the claimant, as "[t]he medical provider shall not bill a patient for services which have been denied by the payment obligor for failure to submit bills following treatment within forty-five (45) days as required by KRS 342.020 and Section 6 of this administrative regulation." 803 KAR 25:096 § 10(3).

*P&P Construction, Inc. v. Farley*, 2022-CA-0332-WC, 2022 WL 2898502, at *6 (Ky. App. July 22, 2022) (unpublished).

The matter now stands before this Court following Farley's appeal. Farley argues that that KRS 342.020 should be read to extend the 45-day deadline for submission of bills until after an award because (i) precedent supports this interpretation, (ii) this Court had "tacitly approved" of the Board's ruling in its *Wonderfoil* decision, and (iii) the Legislature would have amended KRS 342.020 if it had disagreed with the Board's long-standing posture on the question.

## II.  ANALYSIS

"Review by this Court of workers' compensation cases is is *de novo*." *Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 631 (Ky. 2018).

7

Whether the 45-day rule for providers to submit statements for services set forth in KRS 342.020(4) (previously found in KRS 342.020(1)) only applies post-award is a question of statutory interpretation.

In construing a statute, it is fundamental that our primary objective is to determine the legislature's intent in enacting the legislation. "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008). Further, we interpret a "statute only as written, and the intent of the Legislature must be deduced from the language it used, when it is plain and unambiguous . . . ." *W. Ky. Coal Co. v. Nall & Bailey*, 14 S.W.2d 400, 401-02 (1929). When a statute is unambiguous, we need not consider extrinsic evidence of legislative intent and public policy. *Cnty. Bd. of Educ. v. S. Pac. Co.*, 9 S.W.2d 984, 986 (1928).

The relevant text of KRS 342.020(4) states:

> The employer, insurer, or payment obligor acting on behalf of the employer, shall make all payments for services rendered to an employee directly to the provider of the services within thirty (30) days of receipt of a statement for services. The commissioner shall promulgate administrative regulations establishing conditions under which the thirty (30) day period for payment may be tolled. The provider of medical services shall submit the statement for services within forty-five (45) days of the day treatment is initiated and every forty-five (45) days thereafter, if appropriate, as long as medical services are rendered.

There are two distinct time restrictions set forth in this statute. The first applies to employers and insurers, such as P&P and KEMI, who must pay medical providers within thirty days of receiving the provider's billings. This

8

first deadline has been the specific subject of published caselaw while the second deadline applying to medical providers has only been discussed in adjunct.

The time restriction, which concerns us here, is unambiguous and requires a provider to submit billing statements within 45 days after treatment has been provided. The mandate to providers is unmistakable in its clarity. The plain and forthright language of the statute affords no other construction but that the provider "shall" submit the statement for services within forty-five days of the day treatment. "In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command and . . . must be given a compulsory meaning." *Black's Law Dictionary* 1233 (5th ed.1979). "Shall means shall." *Vandertoll v. Commonwealth,* 110 S.W.3d 789, 795–96 (Ky. 2003).

No language in the statute limits the application of this 45-day rule to a period of time post-award. Rather, the date of treatment is the determinative factor and is this date that triggers the start of the 45-day period for a provider to submit its billing to the employer or insurer. In holding that a provider has 45 days *from the date of an award* to deliver its billings to an employer, the Board has impermissibly rewritten an unambiguous statutory provision. With that being said, the Board asserted reliance on precedent for its determination which we will next examine.

In *R.J. Corman,* 864 S.W.2d at 915, the billings at issue were submitted to the employer between two and six months before an award was entered. The employer believed that the proper time to challenge payment was at the hearing

9

before the ALJ. However, that hearing was more than thirty days after the bills had been received. The Board determined the employer should have challenged payment by motion prior to the expiration of thirty days, which would also have been prior to the hearing before the ALJ and thus before an award of medical benefits had ever been made. We reversed and determined that the requirement of KRS 342.020 for employers to make payment for medical bills within thirty days of receipt only "applies to medical statements received by an employer *after* an ALJ has determined that said bills are owed by the employer (emphasis added)." *Id.* 918. That was, and remains, an entirely logical conclusion. An employer should not be compelled to make payments on behalf of an employee when his or her entitlement to benefits is contested or otherwise still at issue requiring adjudication.

We made our determination because "[t]he amendment to KRS 342.020(1) requiring the payment of medical benefits in 30 days is clearly intended to hasten payment of those medical bills that the employer is obligated to pay" and that "[u]ntil an award has been rendered, the employer is under no obligation to pay any compensation, and all issues, including medical benefits, are justiciable." *Id.* at 918.

Simply put, when an employer properly contests an employee's right to compensation, the employer cannot be expected to pay medical claims before an ALJ determines it is liable. Strict enforcement of the 30-day payment rule against an employer, prior to an award being determined, would violate due process. In *R.J. Corman,* this Court addressed the portion of the statute

10

requiring an employer to pay medical benefits, not the second part requiring a provider to submit these billing statements within 45 days of the of treatment which is a wholly different circumstance.

Subsequently, the Board made a determination in *Brown Pallet*. In that case, the Board extended this Court's ruling in *R.J. Corman* to include the portion of KRS 342.020(4) that requires a medical provider to submit statements for services within forty-five days of the day treatment is provided. The Board decided "the requirement that the provider submit statements for services within forty-five days of treatment would also apply post-award and not during the pendency of a claim." *Brown Pallet*, Claim No. 2003-69633. That particular Board determination was not appealed and is of no precedential value to this Court. However, the Board relied upon its decision in *Brown Pallet* to justify its decision in the case now before us.

To the extent that Farley argues that the legislature's failure to amend KRS 342.020 denotes approval of this interpretation of the statute, we stated in *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 560 (Ky. 2011), that "legislative inaction is a weak reed upon which to lean, and a poor beacon to follow in construing a statute." We believe this observation to be even more apt when it comes to instances of administrative bodies (mis)construing a statute, in a way it has never before been, within an unpublished administrative decision.

Next, in *Wonderfoil*, 630 S.W.3d at 706, the employer admitted that the employee's injury was compensable; however, it argued that the ALJ should

11

not order it to compensate the employee for past medical expenses that the employee (not a medical service provider as is the case here) had not submitted in accordance with 803 KAR 25:096 § 11(2).[2] The ALJ agreed with Wonderfoil but the Board reversed holding that the submission requirements apply only after an interlocutory decision or final award has been entered by the ALJ. We affirmed the Board's determination after first examining 803 KAR 25:096 § 11(2)'s requirement that "[e]xpenses incurred by an employee for access to compensable medical treatment . . . shall be submitted to the employer or its medical payment obligor within sixty (60) days of incurring of the expense" utilizing a specific form within the claims process and determining that the regulation was ambiguous because it was impossible to tell from the context whether it "applies only post-award, during litigation but pre-award, or even before the potential claimant files his claim." *Wonderfoil,* 630 S.W.3d at 710.

Only subsequent to the initial determination of ambiguity, did we then examine the regulation in the context of the broader scheme established by the Department of Workers' Compensation's administrative regulations. In so doing, this Court noted that other regulations required an employee to disclose

---

[2] This regulation provides:

> Expenses incurred *by an employee* for access to compensable medical treatment for a work injury or occupational disease, including reasonable travel expenses, out-of-pocket payment for prescription medication, and similar items shall be submitted to the employer or its medical payment obligor within sixty (60) days of incurring of the expense. A request for payment shall be made on a Form 114.

803 KAR 25:096 § 11(2) (emphasis added).

and submit unpaid medical expenses *prior* to final adjudication by the ALJ and stated that "[o]ur interpretation of 803 KAR 25:096, § 11(2) is a natural and logical extension of *R.J. Corman* and *Brown Pallet,* despite *Brown Pallet*'s lack of precedential value to this Court." *Id.* at 712.

We concluded:

[O]ur interpretation does not offend due process by creating unfair surprise to employers, despite arguments made otherwise to this Court. Even under our interpretation of 803 KAR 25:096, § 11(2), a claimant is still required to submit medical expenses they wish to have paid pursuant to 803 KAR 25:010, §§ 7 and 13. Those medical expenses must be included in the claimant's notice of disclosure that must be filed within forty-five days of the issuance of the Notice of Filing of Application. 803 KAR 25:010, § 7(2)(e)7.

The claimant is then under a continuing obligation to turn over new medical expenses within ten days of receiving those expenses pursuant to 803 KAR 25:010, § 7(2)(f). Further, a claimant is required to bring copies of unpaid medical bills and expenses to the benefit review conference. 803 KAR 25:010, § 13(9)(a). If he or she fails to do so and does not show good cause, such failure "may constitute a waiver to claim payment for those bills." *Id.* These requirements prevent employers from being unfairly surprised by requested medical expenses and provide a mechanism by which claimants may be penalized for failure to comply.

*Id.* at 713.

Therefore, in *Wonderfoil* we *only* addressed the time limits for employees to submit medical bills to the employer for repayment as set forth in 803 KAR 25:096 § 11(2). Neither that regulation, nor this Court, addressed the statutory language of KRS 342.020(4) requiring medical service providers to submit billing statements within 45 days of service.

Neither *R.J. Corman* nor *Wonderfoil* provides support for the Board's ruling that the 45-day requirement for a provider to submit medical billing

13

statements only applies post-award. Accordingly, we agree with the decision of the Court of Appeals that the Board misconstrued the controlling statute and precedent and therefore erred as a matter of law in holding that the 45-day requirement for providers to submit billing statements applied only post-award.

To permit some, if not all, medical providers to withhold their billings for indefinite periods of time from consideration and payment by the employer, its insurer, the ALJ, and even their patients, would upend the statutory and regulatory framework of our workers' compensation adjudicatory process, the billing processes for providers, and the adjustment processes for obligors. Such delays are contrary to the fundamental purposes of the Workers' Compensation Act, one of which is the prompt resolution of workers' compensation claims. *See Searcy v. Three Point Coal Co.,* 280 Ky. 683, 134 S.W.2d 228 (1939). Such indefinite delays, if allowed, would also undermine the ability of obligors and claimants to effectively assess, and then fairly settle, their claims in a timely and cost-effective manner as occurred in this case.

Arguments by either the Board or providers regarding the narrow timeframe of the 45-day window for the submission of medical billings must be made to the legislature as its province is to draft and, if necessary, amend our Commonwealth's statutes. This Court interprets our statutes, it cannot rewrite them. As stated in *University of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017):

> We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source. In other words,

14

we assume that the Legislature meant exactly what it said, and said exactly what it meant.

(internal alterations, citations, and quotation marks omitted).

KRS 342.020(4) is unambiguous, and its plain language does not contain anything that limits the application of the 45-day rule to after an award determination has been made.

This opinion however does not address the applicability or potential implementation of 803 KAR 25:096 § 6 which states, "Tender of Statement for Services. If the medical services provider fails to submit a statement for services as required by KRS 342.020(4) *without reasonable grounds*, the medical bills shall not be compensable." (Emphasis added).

In this matter, neither ARH nor Gram Resources appeared or submitted any responses to the ALJ, the Board, the Court of Appeals or this Court despite being served. The record contains no grounds whatsoever for their delays in transmitting billings to the P&P or KEMI.

Lastly, we note, as did the Court of Appeals, that this interpretation of KRS 342.020(4) will not harm Farley as "[t]he medical provider shall not bill a patient for services which have been denied by the payment obligor for failure to submit bills following treatment within forty-five (45) days as required by KRS 342.020 and Section 6 of this administrative regulation." 803 KAR 25:096 § 10(3).

15

### III. Conclusion

For these reasons, we conclude that the requirements of KRS 342.020(4) clearly mandate that medical service providers submit their billings within 45 days of treatment and such requirement applies both pre- and post-award.

We affirm the Court of Appeals decision which reversed the opinion of the Workers' Compensation Board affirming the decision of the ALJ who had determined that P&P was responsible for payment of the billing statements submitted outside of the 45-day period.

This matter is remanded with directions that the Board reverse the ALJ's decision as to the billing statements submitted by ARH and Gram Resources because they were submitted outside of the 45-day period.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jeffery A. Roberts
Roberts Law Office

Edmond Collett
Edmond Collett, PSC

COUNSEL FOR APPELLEE:

W. Barry Lewis
Lewis and Lewis Law Offices

ADMINISTRATIVE LAW JUDGE:

Hon. Peter Greg Naake

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey
Chairman

AMICUS CURIAE COUNSEL FOR
KENTUCKY WORKERS ASSOCIATION:

Eric M. Lamb